**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

--------------------------------------------------------------- x

SCA HYGIENE PRODUCTS AKTIEBOLAG and
SCA PERSONAL CARE, INC.,

                     Plaintiffs,

      v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC,

                  Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.   1:10-CV-122-M

*Filed Electronically*

--------------------------------------------------------------- x

<u>**DECLARATION OF DANIEL D. GARDNER IN SUPPORT OF FIRST QUALITY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT**</u>

531670.1

I, Daniel D. Gardner, under penalty of perjury, hereby declare as follows:

1.      I make this declaration pursuant to Fed. R. Civ. P. 56(c)(4) in support of

Defendants First Quality Baby Products, LLC, First Quality Hygienic, Inc., First Quality

Products, Inc., and First Quality Retail Services, LLC (collectively, "First Quality") motion for

partial summary judgment of non-infringement for all asserted claims of Plaintiffs SCA Hygiene

Products Aktiebolag, and SCA Personal Care, Inc.'s (collectively, "SCA") U.S. Patent No.

6,375,646 ("the '646 Patent") ("First Quality's Motion").

## I.      SUMMARY OF MY DECLARATION AND OPINIONS

2.      I understand that First Quality's Motion is directed to eight accused product

categories, namely the products represented by SCA-AP-020, SCA-AP-050, SCA-AP-056, SCA-

AP-016, SCA-AP-051, SCA-AP-01, SCA-AP-04 and SCA-AP-010 (collectively, "the Accused

Products").

3.      As explained below, it is my opinion that asserted claims 1-11, 15-25, and 35-38

of the '646 Patent ("the Asserted Claims") are not infringed by any of the Accused Products.

4.      Specifically, representative samples SCA-AP-020, SCA-AP-050 and SCA-AP-

056, and other products with similar chassis structure, do not infringe asserted Claims 1-6, 10, 11,

15-21, 25, and 35-38.

5.      Representative samples SCA-AP-016, SCA-AP-051, SCA-AP-01 and SCA-AP-

04, and other products with similar chassis structure, do not infringe asserted Claims 15, 18-21,

and 25.

6.      Representative sample SCA-AP-010, and other products with similar chassis

structure, do not infringe asserted Claims 1-11, 15-25, and 35-38.

7.      A true and correct copy of the '646 Patent is attached as Exhibit 1.

## II.     BACKGROUND INFORMATION

### A.     Summary of my Professional Background and Qualifications

8.     My professional background, qualifications and experience testifying as an expert are set forth in my *curriculum vitae,* attached as Exhibit 2.

### B.     Data and Other Information Considered

9.     I have relied on the items listed in the Appendix of this Declaration in forming my opinions and conclusions set forth in this Declaration.

10.     Among other things, I have considered the October 19, 2012 Expert Report of Earle Sherrod Relating to Infringement ("the Sherrod Report").  I also considered the deposition testimony of (1) Urban Widlund, a named inventor of the '646 Patent; and (2) Mr. Sherrod, SCA's expert on the issue of infringement, as well as the Exhibits marked at these depositions.  I attended the deposition of Mr. Sherrod.

11.     I have personally inspected the Accused Products.  In forming my opinions, I have relied on my personal knowledge of the products that I have inspected.

12.     I also base this Declaration on my knowledge from my 26 years of direct experience in the manufacture of absorbent articles, including diapers, training pants, and adult incontinence products.

### C.     Legal Standards

13.     To render my non-infringement analysis, I have been informed about the legal standards for patent infringement. Specifically, it is my understanding that the determination of whether an accused product or process infringes a claim of a patent is a two-step process.  The first step, where necessary, involves interpreting the claims.  As discussed below, it is my understanding that certain terms of the Asserted Claims have been interpreted.

531670.1                                          - 3 -

14.     As to the second step of the infringement analysis, it is my understanding that the construed claims must be compared to the accused process to determine whether or not each and every limitation of the claim is met by the accused process.

15.     It is my understanding that there are two ways in which a patent claim may be infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents."  However, it is my understanding that SCA is not asserting infringement under the "doctrine of equivalents" with respect to any of the Asserted Claims.

16.     It is my understanding that there can only be literal infringement if each and every element of a patent claim is literally present in the accused product or process.  If so, the accused product or process literally infringes that claim.  If one or more elements of a patent claim is not literally present in the accused product or process, then it is my understanding that it cannot literally infringe.

17.     I also understand that a dependent claim includes all of the limitations of the claim from which it depends.  Thus, if an independent claim is not infringed, all claims which depend from it cannot be infringed.

## III.    FACTUAL BACKGROUND

### A.    The '646 Patent

18.     The '646 Patent describes a pants-type disposable diaper for use by both potty-training children and adults with incontinence issues.  (Ex. 1, '646 Patent, Col. 1:1-10).  The '646 Patent explains that at least one end of an absorbent pad must be disposed within an "elastically stretchable region."  (*Id.*, Col. 4:43-55).  This is in contrast to the prior art (e.g., EP 0 320 991 A2 to Van Gompel et al. ("Van Gompel", Attached as Exhibit 3), in which the elastics

merely surrounded the absorbent pad. (*Id.*, Col. 4:43-55). This shown in the annotated figures

below, indicating the locations of their absorbent pads (blue) and elastic material (purple):





**Fig. 1 of the '646 Patent (Annotated)**          **Fig. 5 of Van Gompel (Annotated)**

19.     The '646 Patent defines the length of the front and the back parts of the diaper by

the lengths of the side-edges 4, 5. (Ex. 1, '646 Patent, Col. 5:52-57). These side edges are then

joined together to create the finished product. (*Id.*; *see also* Figs. 1, 3). The crotch part is

defined as the area "located [in] between" the front and back parts, and is defined by its own

"side-edges 8." (*Id.*).

20.     The above Figure 1 of the '646 Patent (left) has an "elastically stretchable region"

that "covers essentially the whole" of the front and back parts of the diaper, in contrast to the

prior art Van Gompel diaper (right). (Ex. 1, '646 Patent, Col. 7:37-41; *see also* '646 Patent,

3:36-52).

**B.     The Asserted Claims of the '646 Patent**

21.     As stated above, I understand that SCA has asserted Claims 1-11, 15-25, 35-38 of

the '646 Patent ("Asserted Claims") against various Accused Products.

22.     The Asserted Claims include two independent claims, Claims 1 and 15.  Each of these claims specifically require that "at least one of the respective end parts of the absorbent layer be[] disposed within one of said elastically stretchable regions" ("the Disposed Within Limitation").  (Ex. 1, '646 Patent, Col. 8:64-9:13, Col. 10:21-39).

23.     In addition, Claim 1 also includes a requirement that "at least one elastically stretchable region cover[] essentially the whole of at least one of the respective front and back parts" of the diaper ("the Essentially the Whole Limitation").  (Ex. 1, '646 Patent, Col. 8:64-9:13).

24.     I have been informed that, on February 10, 2012, the Court issued a claim construction order in this case.  (ECF No. 61).  The following claim constructions are relevant to First Quality's Motion:

| Claim Term(s) | Claim Construction |
| --- | --- |
| "elastically stretchable region(s)", "stretchable region(s)" | an area (or areas) bounded by elastic elements/material incorporating a continuous number of elastic elements/material that is capable of being stretched (ECF No. 61 at 12) |
| "elastically stretchable region covering essentially the whole of at least one of the respective front and back parts", "stretchable region covers essentially the whole of at least one of the respective front and back parts" | an area bounded by elastic elements/material incorporating a continuous number of elastic elements/material that is capable of being stretched covering almost all or substantially all of the front or the back part (ECF No. 61 at 15) |

### C.     The Accused First Quality Products

25.     I understand that SCA alleges that various First Quality protective underwear products infringe the Asserted Claims of the '646 Patent.  I also understand that the parties have agreed to divide the accused products into nine categories.  (Ex. 4, Sherrod Rep. ¶ 33).

26.     As noted above, First Quality's Motion is directed to the products represented by eight of the accused product categories represented by SCA-AP-020, SCA-AP-050, SCA-AP-056, SCA-AP-016, SCA-AP-051, SCA-AP-01, SCA-AP-04 and SCA-AP-010.

27.     For purposes of my analysis, I have further divided these eight categories into the following four groups: (1) Design 1 Products; (2) Design 2 Products; (3) Crotch Elastic Design 2 Products; and (4) Design 3 Products.

28.     The relevant features and configurations of the four accused products groups are discussed below.

### 1.     Design 1 Products

29.     The "Design 1 Products" include SCA-AP-020, SCA-AP-050, SCA-AP-056, as well as all products with similar chassis structure.

30.     Each of the Design 1 Products includes elastic material (i.e., elastic threads) in the front and rear parts of the pant that surrounds, but does not overlap, the ends of the absorbent pad. (*See* Ex. 4, Sherrod Rep. ¶¶ 44, 46, 47 (stating that "[t]he elastic threads are deactivated over the absorbent pad" on the "front part" and "back part"; *see also* Exs. E-G to Sherrod Rep.).

31.     A photograph of a representative Design 1 product, SCA-AP-050, is provided below.  As can be seen, the end parts of the absorbent pad are disposed in regions of the front part and back part with no elastic elements at all.



**Photograph of SCA-AP-050 (annotated)**

### 2.     Design 2 Products

32.     The "Design 2 Products" include SCA-AP-016 and SCA-AP-051, as well as all other products with similar chassis structure.

33.     Each of the Design 2 Products include elastic material (i.e., elastic threads) located above the ends of the absorbent pad in the front and back of the pant.  (*See* Ex. 4, Exs. J-K to Sherrod Rep.).

34.     Like the Design 1 Products, the ends of the absorbent pad are disposed in a region with no elastic elements at all.  (*See id*. ¶¶ 53-54 (noting that "[t]he elastic threads ... are

deactivated over the absorbent pad on the front and back parts"; *see also* Exs. J-K to Sherrod Rep.).

35.     A photograph of a representative Design 2 product, SCA-AP-016, is provided below.  As can be seen, the ends of the absorbent pad are disposed in a region with no elastic elements at all.



**Photograph of SCA-AP-016 (annotated)**

### 3.     Crotch Elastic Design 2 Products

36.     The "Crotch Elastic Design 2 Products" include SCA-AP-01 and SCA-AP-04, as well as all other products with similar chassis structure.

37.     Like the Design 2 Products, the Crotch Elastic Design 2 Products include elastic material (i.e., elastic threads) located above the ends of the absorbent pad in the front and back of the pant.  (*See* Ex. 4, Exs. H-I to Sherrod Rep.).   In addition, these products contain thigh elastics (highlighted in purple) that overlap the absorbent pad in the crotch part.  (*Id.*).



**Photograph of SCA-AP-01 (annotated)**

### 4.   Design 3 Products

38.   The "Design 3 Products" include SCA-AP-010, as well as other products with similar chassis structure.  The Design 3 Products utilize an elastic laminate material in the front and rear parts of the product.  (Ex. 4, Sherrod Rep. ¶ 56; *see* also Ex. L to Sherrod Rep.).

39.   Notably, the portion of the elastic laminate material that overlaps with the absorbent pad is not stretchable, since the elastic property of the film has been rendered ineffective.  This is accomplished by gluing this portion of the elastic to the underlying material in the area where the absorbent pad is located.  (*See* Ex. 5, Sherrod Dep. 595-96, Dec. 12, 2012 (stating that gluing is a method of deactivating elastics)).  This area is commonly referred to in the industry as a "deactivated" region.



**Photograph of SCA-AP-010 (annotated)**

## IV.   THE ACCUSED PRODUCTS DO NOT LITERALLY INFRINGE THE '646 PATENT

40.    As detailed below, it is my opinion that none of the Accused Products infringes the asserted claims of the '646 Patent.

### A.    The Design 1 and 3 Products Do Not Meet the Disposed Within Limitation

41.    As noted above, the Design 1 and 3 Products are all accused of infringing Claims 1 and 15, as well as various dependent claims. (Ex. 4, Sherrod Rep. ¶ 58).  All of these claims include the Disposed Within Limitation (i.e., at least one of the "end parts" of the absorbent pad must fall within an "elastically stretchable region" located in the front part or back part of the diaper.)

42.    As discussed and shown above (*See* § I.A.14), the end parts of the absorbent pads of the Design 1 Products are located in regions with no elastic elements at all.  In addition, the end parts of the Design 3 Products are located in regions where the elastic has been deactivated. (*See* § I.A.4 above4).  As a result, there is no elastic material in the areas that contain the ends of the absorbent pads.

43.    Mr. Sherrod agrees that there is no elastic in this area. (*See* Ex. 4, Sherrod Rep. ¶¶ 44, 46, 47 (noting that "[t]he elastic threads are deactivated over the absorbent pad" on the "front part" and "back part").  Specifically, Mr. Sherrod testified:

Q. There is a big portion in there where there is no elastics, right?

A. There is a portion where the elastics have been cut.

Q. Well, there is no elastics in the area which you have included in the elastically stretchable region, right?

A. Yes.

*        *        *

> Q. .. [T]he structural question is, are there any elastics that go over the core [in SCA AP-50]?
>
> A. Not in that sample.

(Ex. 5, Sherrod Dep. 223:16-23, Dec. 11, 2012,  Sherrod Dep. 353:6-354:7, Dec. 12, 2012; *see also* Ex. 5, Sherrod Dep. 595-96, Dec. 12, 2012 (testifying that gluing is a method of deactivating elastics).

44.     Nevertheless, I understand that Mr. Sherrod claims that the "elastically stretchable regions" encompass the entire front and/or rear parts of the Design 1 and 3 Products, including the regions with no elastic and/or where the elastic has been deactivated.  (*See* Ex. 4, Sherrod Rep. ¶¶ 44, 46, 47; *see also* Exs. E-G and L to Sherrod Rep.).  Mr. Sherrod also claims that "[t]he front end part of the pad/absorbent layer of the accused products extends into the elastically stretchable region." (Ex.4, Ex. DD to Sherrod Rep. at 3, Ex.  FF to Sherrod Rep. at 3).

45.     This can all be seen in the representative figure below, taken from Mr. Sherrod's report.  (Ex. 4, Ex. E to Sherrod Rep.).  Specifically, Mr. Sherrod has labeled (in green) the entire front part of the article as "elastically stretchable region A" ("Region A") and the entire back part of the diaper as "elastically stretchable region B/C" ("Region B/C").[1]  I have further annotated Mr. Sherrod's figure in red to show the areas that, as Mr. Sherrod admits, contain no elastic material.

---

[1] Mr. Sherrod's annotations of the other representative Design 1 and Design 3 products refer to this area as "Region B." (Ex. 4, Exs. F, G and L).



**Annotation of Ex. E to Sherrod Rep. (SCA-AP-020)**

46.    While Mr. Sherrod and I agree about the structure of these products, I disagree with Mr. Sherrod as to how the relevant areas should be labeled.  It is my opinion that the areas labeled by Mr. Sherrod as Region A and Region B/C cannot be "elastically stretchable regions," as required by Claims 1 and 15.

47.    As noted above, I understand that the Court construed the term "elastically stretchable region" to mean "an area bounded by elastic elements/material incorporating a

continuous number of elastic elements/material that is capable of being stretched."  (ECF No. 61 at 12).  However, Region A and Region B/C, as labeled by Mr. Sherrod, do not meet this definition.  At a minimum, they: (1) are **not** bounded by elastic elements/materials; and (2) do **not** include a continuous number of elastic elements.

48.     First, neither Region A nor B/C is enclosed by elastic material.  Rather, each of these areas contains a large gap in their borders with no elastic elements at all.  As can be seen, this gap is fairly large, spanning the entire width of the crotch portion.  Therefore, it is my opinion that Region A and Region B/C are not "bounded by elastic elements."

49.     Second, neither Region A nor B includes "a continuous number of elastic elements."  In this regard, Mr. Sherrod admits that the elastic elements that extend over the absorbent pad have been deactivated (i.e., (1) severed and removed or (2) adhered by gluing).  As a result, the elastic material that surrounds the absorbent pad is discontinuous.

50.     Therefore, it is my opinion that Region A and Region B/C do not include "a continuous number of elastic elements."

51.     For at least these reasons, it my opinion that the Design 1 and 3 Products do not satisfy the Disposed Within Limitation, as required by all of the Asserted Claims.

**B.      The Design 1 and 3 Products Do Not Meet the Essentially the Whole Limitation**

52.     Claim 1 (and its dependent claims) further requires that the "elastically stretchable region cov[er] *essentially the whole* of at least one of the ... front and back parts" of the pant (i.e., the Essentially the Whole Limitation).  It is also my opinion that the Design 1 and Design 3 Products do not include this limitation.

53.     As noted above, it is my understanding that the Court has construed "essentially the whole" to mean "almost all or substantially all."

54.     Below is a photograph of a representative Design 1 Product, SCA-AP-020.  I have annotated this photograph to show the area of the front part that does not contain any elastic (red dashed box).



**Annotated Photograph of SCA-AP-020**

55.     As can be readily seen, the Design 1 and 3 Products do not satisfy the Essentially the Whole Limitation.  Rather, a significant portion of each of the front and rear parts of the Design 1 and 3 Products do not contain any elastic material (e.g., area in red dashed box).

56.     Further, as can be seen in the photograph above of SCA-AP-020, less than half of the area of the front part of this product is covered by elastic material.  This is also true for SCA-AP-056. (Ex 4, Ex. G to Sherrod Rep.).   The other Design 1 and 3 Products, namely SCA-AP-050 and SCA-AP-010, similarly do not have elastics covering "almost all or substantially all" of the front or back parts.  (*See* Ex., 4, Exs. F and L to Sherrod Rep.).

57.     For at least these reasons, it is my opinion that the Design 1 and 3 Products do not satisfy the Essentially the Whole Limitation, as required by Claim 1 and its asserted dependent claims.

**C.     The Design 2 Products Do Not Meet the Disposed Within Limitation**

58.     It is my understanding that the Design 2 Products are all accused of infringing Claims 15, 18-21, and 25.  (Ex. 4, Sherrod Rep. ¶ 58).

59.     As noted above, each of these claims includes the Disposed Within Limitation.  It is my opinion that, like the Design 1 and 3 Products, the Design 2 Products do not have "at least one of the respective end parts of the absorbent layer being disposed within one of said elastically stretchable regions."

60.     I understand that Mr. Sherrod asserts that the Design 2 Products meet the Disposed Within Limitation because "the front end part of the pad/absorbent layer extend[s] into elastically stretchable region B ["Region B"] on the front part [and] ... the rear end part of the pad/absorbent layer extend[s] into elastically stretchable region D ["Region D"] on the back part. (Ex. 4, Ex. EE to Sherrod Rep. at 4).

61.     In this regard, and as shown in the image below taken from the Sherrod Report, Mr. Sherrod has marked the front and rear *thigh elastics* as Regions B and D.  I have further annotated Mr. Sherrod's figure in red to indicate this.



**Annotation of Ex. J to Sherrod Rep. (SCA-AP-016)**

62.     I disagree with Mr. Sherrod's contentions.  Specifically, the thigh elastics labeled by Mr. Sherrod as Regions B and D cannot be "elastically stretchable regions" because they (1) are <u>not</u> "bounded by elastic elements/material"; and (2) do <u>not</u> incorporate "a continuous number of elastic elements/material," as required by the Court's claim construction.  Rather, there is a large gap in the elastic in Regions B and D (indicated above).  Thus, the end parts are located in an area with no elastic at all.

63.     As such, it is my opinion that the Design 2 Products cannot infringe Asserted Claims 15, 18-21, and 25.

531670.1

### D.   The Crotch Elastic Design 2 Products Do Not Meet the Disposed Within Limitation

64.     It is my understanding that the Crotch Elastic Design 2 Products are accused of infringing asserted Claims 15, 18-21 and 25.  (Ex. 4, Sherrod Rep. ¶58).  For the reasons discussed below, it is my opinion that the Crotch Elastic Design 2 Products do not infringe the asserted claims.

65.     In particular, the Crotch Elastic Design 2 products do not have "at least one of the respective end parts of the absorbent layer being disposed within" an elastically stretchable region, *in "at least one of the respective front and back parts*," as required by the asserted claims.

66.     As shown in the figure below, Mr. Sherrod contends that, in the Crotch Elastic Design 2 Products, the ends of the absorbent pad are disposed within "elastically stretchable regions" B and D.  (Ex. 4, Sherrod Rep. ¶¶ 51-52;  Exs. H and I to Sherrod Rep.).  Mr. Sherrod also contends that that elastically stretchable regions B and  D are located in the front and back parts of these products, respectively.  (*Id.*).  I disagree with Mr. Sherrod's contentions.



**Annotation of Ex. H to Sherrod's Rep. (SCA-AP-001)**

67.     Contrary to Mr. Sherrod's contentions, elastically stretchable regions B and D are not located in the front and back parts of these products.  Rather, Regions B and D are located *in the crotch part*.  I have annotated the figure above in red to show the correct bounds of the "front part" and "back part" of this diaper.

68.     I understand that the Court did not provide any special meaning to the terms "front part" or "back part."  I have been informed that these terms should therefore be given the meaning set forth in the specification.

69.     Mr. Sherrod applies a new and different definition for "front part" and "rear part." Specifically, Mr. Sherrod states that: (1) the "front part" is "the portion of the product located between the side seams and generally extending from the waist to the beginning of the crease of the leg on the front of the wearer's body"; and (2) the "back part" as "the portion of the product located between the side seams and generally extending from the waist to the end of the curve of the buttocks on the back of the wearer's body."  (Ex. 4, Sherrod Rep. ¶ 37).  Mr. Sherrod does not provide any explanation as to how he determined that a person of ordinary skill in the art would arrive at these constructions.

70.     The '646 Patent explains that "[e]ach of the front and the back parts have two side-edges 4, 5 and one end-edge 6, 7. The crotch-part 3 has two side-edges 8."  (Ex. 1, '646 Patent, Col. 5:55-57, Fig. 1).  Based on this disclosure, one of ordinary skill in the art at the time of the alleged invention would have understood that the "front part" is the part of the diaper facing forward of the wearer and defined by its side edges, the "back part" is the part of the diaper placed rearward of the wearer and defined by its side edges, and the "crotch part" is the part between the front part and the back part and defined by its side edges.

71.     When the "front part," "back part," and "crotch part" are properly defined (as shown in the dashed red lines in the figure above), both Region B and Region D fall squarely within the "crotch part" and not within the "front part" or "back part" as alleged by Sherrod.

72.     Therefore, the Crotch Elastic Design 2 Products do not infringe asserted Claims 15, 18-21 and 25.

### 1.      Regions B and D Are Too Narrow

73.      It is also my opinion that, even if Mr. Sherrod's construction was correct, Region

B and Region D would still not be "elastically stretchable regions," as described in the '646

Patent.

74.      These regions contain at most three elastic strands.  (*See* Ex. 4, Exs. H and I to

Sherrod Rep.).   In this regard, the first named inventor of the '646 Patent, Urban Widlund,

testified that three strands of elastic are not enough to constitute an elastically stretchable region:

> Q. Your patent requires elastically stretchable regions, right?
>
> A. Right.
>
> Q. I want to know if there is any elastically stretchable regions in the sample you are holding in your hand consistent with what your patent calls an elastically stretchable region.
>
> A. There is a small elastic stripe up here, but that's not what we call elastic region of some dignity. That is missing.
>
> Q. When you say "region of some dignity," **would that be more than three strands?**
>
> A. **Yes.**
>
>              *      *      *
>
> Q. The elastic stretchable region that would be required would be something **more than merely three strands in your mind?**
>
> A. Yes.

(Ex. 6, Widlund Dep. 191:25-194:24, March 15, 2012 (emphasis added; objections omitted)).

75.      Therefore, Regions B and D do not constitute elastically stretchable regions as

defined by the '646 Patent and confirmed by Mr. Widlund.

76.      For this reason as well, the Crotch Elastic Design 2 Products do not infringe

Claims 15, 18-21 and 25.

531670.1

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

Petoskey, Michigan
Dated: January 11, 2013

Daniel D. Gardner

## APPENDIX

### Documents and Other Information Relied Upon

| Exhibit No. | Description |
|---|---|
| 1 | U.S. Patent No. 6,375,646 to Widlund et al. |
| 2 | *Curriculum Vitae* of Daniel D. Gardner |
| 3 | European Patent Application EP 0 320 991 A2 to Van Gompel et al. |
| 4 | October 19, 2012 Expert Report of Earle Sherrod Relating to Infringement, and Exhibits A-GG thereto |
| 5 | Excerpts from the Deposition Transcript of Earle Sherrod |
| 6 | Excerpts from the Deposition Transcript of Urban Widlund |
| NA | February 10, 2012 Claim Construction Memorandum Opinion and Order, ECF No. 61 |

531670.1