## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:10CV-00122-JHM**

**SCA HYGIENE PRODUCTS AKTIEBOLAG and**
**SCA PERSONAL CARE, INC.**                                              **PLAINTIFFS**

**v.**

**FIRST QUALITY BABY PRODUCTS, LLC,**
**FIRST QUALITY HYGIENIC, INC.,**
**FIRST QUALITY PRODUCTS, INC., and**
**FIRST QUALITY RETAIL SERVICES, LLC**                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants First Quality Baby Products, LLC,

First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC

(collectively "First Quality") for summary judgment based on the doctrines of laches and equitable

estoppel [DN 82, DN 83] and on a motion by First Quality for a hearing on this motion for summary

judgment [DN 84].  Fully briefed, these matters are ripe for decision.

### I.  BACKGROUND

Plaintiffs SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively

"SCA") assert that some of First Quality's pants-type disposable diapers infringe the asserted claims

of U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively "the '646

Patent").  The invention described in the '646 Patent was developed by engineers at SCA's Swedish

research laboratories and relates to a pants-type disposable diaper for use by both potty-training

children and adults with incontinence issues.  The inventors filed an initial patent application in

Sweden on March 4, 1992, and the '646 Patent issued in the United States on April 23, 2002, with

claims 1-28.  Claims 29-38 were added during a reexamination which concluded on March 27, 2007.

Claims 1 and 15 are independent claims and the remainder of the claims depend from either claim

1 or 15.

On October 31, 2003, counsel for SCA wrote a notice letter to Mr. Kambiz Damaghi, President of First Quality Enterprises, Inc. The letter provided that SCA was the owner of the patent rights of the '646 Patent, "which related to absorbent pants-type diapers . . . ." (October 31, 2003, Letter, DN 83-8, DN 95-3.) The letter identified the First Quality Prevail All Nites absorbent pants-type diapers as infringing the '646 Patent. Specifically, the letter provided:

> It has come to our attention that you are making, selling and/or offering for sale in the United States absorbent pants-type diapers under the name Prevail All Nites. We believe that these products infringe claims of the patent listed above.
>
> We suggest that you study U.S. Patent No. 6,375,646 B1. If you are of the opinion that the First Quality Prevail All Nites absorbent pants-type diaper does not infringe any of the claims of this patent, please provide us with an explanation as to why you believe the products do not infringe. If you believe that the products do infringe, please provide us with your assurance that you will immediately stop making and selling such products.
>
> Please provide us with your response before **November 21, 2003**.

(Id. at 1.)

First Quality investigated the allegation and promptly responded to SCA's letter. On November 21, 2003, counsel for First Quality responded indicating that the '646 Patent was invalid in view of what the parties refer to as the Watanbe patent ("the '649 Patent"). Specifically, the letter provided:

> As you suggested, we studied U.S. Patent No. 6,375,646 B1 (the '646 Patent"), which we understand is owned by your client SCA Hygiene Products AB. In addition, we made a cursory review of prior patents and located U.S. Patent No. 5,415,649, ("the '649 Patent"), which was filed in the United States on October 29, 1991 and is therefore prior to your client's '646 Patent. A review of Figs. 3 and 4 of the prior '649 Patent reveals the same diaper construction claimed by the '646 Patent. Thus, the prior '649 Patent invalidates your client's '646 Patent. As you know, an invalid patent cannot be infringed.

(November 21, 2003 Letter, DN 95-4.) First Quality further provided that all future correspondence

to First Quality should be directed to First Quality's counsel. (Id.)  First Quality heard nothing further from SCA regarding the '646 Patent.

Five months later, on April 27, 2004, SCA sent another letter to First Quality asserting that a different First Quality Product infringed a different SCA Patent, U.S. Pat. No. 6,726,670 ("the '670 Patent").  SCA's April 2004 letter did not mention its earlier assertion of the '646 Patent.  (April 24, 2004, Letter, DN 83-10.)  On May 24, 2004, First Quality responded to SCA's April 27, 2004 letter, explaining that it did not infringe the '670 Patent.  First Quality also referred to the 2003 correspondence relating to the '646 Patent.  (See May 24, 2004 Letter, DN 83-11.)("As we previously advised you in our letter of November 21, 2003, we also represent First Quality Enterprises, Inc. and, in the future, correspondence from you to [First Quality] should be directed to the undersigned.").  On July 6, 2004, SCA replied to First Quality's May 24, 2004, letter disagreeing with First Quality regarding the '670 Patent, but saying nothing about First Quality's position on the '646 Patent.  (July 6, 2004, Letter, DN 83-12.)  On July 20, 2004, First Quality replied to SCA's July 6, 2004, letter.  (July 20, 2004, Letter, DN 83-13.)  First Quality received no further correspondence from SCA regarding the '646 patent.

On July 7, 2004, SCA initiated an *ex parte* reexamination proceeding in the U.S. Patent Office for the '646 Patent over the Watanabe patent. The reexamination proceeding lasted for over three years.  On March 27, 2007, the Patent Office issued a reexamination certificate that confirmed the validity of all claims of the '646 Patent and added a number of new dependent claims.  It is undisputed that SCA did not notify First Quality as to the existence of the reexamination proceeding, nor did SCA ever advise First Quality that SCA intended to file suit against First Quality once the reexamination was complete.

SCA filed this case on August 2, 2010, alleging that some of First Quality's pants-type

disposable diapers infringe the asserted claims of U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively "the '646 Patent").  First Quality filed a counterclaim against SCA alleging claims of noninfringement and patent invalidity.  The parties identified six claim construction issues contained in the '646 Patent in claims 1-11, 15-25, 29-33, and 35-38.  On December 29, 2011, the Court conducted a hearing pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996).  On February 10, 2012, the Court issued a Claims Construction Memorandum Opinion and Order determining the construction of the disputed claims.

First Quality has now filed a motion for summary judgment based on the doctrines of laches and equitable estoppel and a motion for partial summary judgment of non-infringement for all asserted claims, along with two related motions to exclude portions of expert testimony and reports. [DN 82, DN 83, DN 98, DN 96, DN 97].  SCA also filed a motion to exclude First Quality's expert on the issue of infringement. [DN 100].  This Opinion addresses only the motion for summary judgment based on the doctrine of laches and equitable estoppel.

## II.  STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

## III.  DISCUSSION

First Quality moves for summary judgment arguing that SCA's infringement claims are barred by the doctrines of laches and equitable estoppel.

### A.  Laches

"The Supreme Court has long recognized the defense of laches to a patent infringement action brought in equity."  A.C. Aukerman Co. v. R. L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992)(citing Lane & Bodley Co. v. Locke, 150 U.S. 193 (1893)).  Laches is "defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." Id. at 1028-1029.  In determining the applicability of the laches defense, the Federal Circuit has directed district courts to consider whether "(a) the patentee's delay in bringing suit was unreasonable and inexcusable," and whether "(b) the alleged infringer suffered material prejudice attributable to the delay." Id. at1028 (Fed. Cir. 1992); FMC Corp. v. Guthery, 2009 WL 1033663, *3 (D. N.J. April 17, 2009).  If these factors are proven, "laches bars the recovery of patent damages for any time period before the suit was filed."  Lautzenhiser Technologies, LLC v. Sunrise Medical HHG, Inc., 752 F. Supp. 2d 988, 999 (S.D. Ind. 2010)(quoting A.C. Aukerman Co., 960 F.2d at 1028).

5

Furthermore, "'a delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches.'" FMC Corp., 2009 WL 1033663, *3(quoting Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir.1993)). "The presumption requires the district court to infer unreasonable delay and resulting prejudice." Id.  This presumption can be rebutted if the patentee "raises a genuine factual issue that the delay was reasonable or excusable or offers evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Id. (quoting Serdaveric v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1359 (Fed. Cir. 2008). "If the presumption is overcome, the adverse party must affirmatively prove both elements of laches by a preponderance of the evidence." Id. (quoting Church & Dwight Co., Inc. v. Abbott Lab., 2008 WL 5416383, *5 (D.N.J. Dec.23, 2008)). For purposes of laches, "the clock starts to run at 'the time the plaintiff *knew or reasonably should have known* of its claim against the defendant.'" Lautzenhiser Technologies, 752 F. Supp. 2d at 999 (quoting A.C. Aukerman Co., 960 F.2d at 1032).

### 1. Applicability of the Presumption

The record reflects that SCA knew or should have known of its claims against First Quality no later than October 31, 2003, the date it sent the letter to First Quality regarding the '646 patent infringement claim. Because the delay in bringing the patent infringement action exceeded six years, First Quality is entitled to the benefit of the presumption of unreasonable delay and prejudice. Thus, SCA "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." Lautzenhiser, 752 F. Supp. 2d at 1001 (citing Aukerman, 960 F.2d at 1038). If SCA fails to come forward with "*either* affirmative evidence of a lack of prejudice *or* a legally cognizable excuse for its delay in filing suit," then First Quality will

6

prevail.  Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996) (recognizing that plaintiff must do more than attack defendant's evidence regarding unreasonableness and prejudice, because "the defendants could have remained *utterly mute* on the issue[s] . . . and nonetheless prevailed."); Lautzenhiser, 752 F. Supp. 2d at 1001(citing ABB Robotics, Inc. v. GMFanuc Robotics Corp., 828 F. Supp. 1386, 1392 (E.D. Wis. 1993)(defendant must put forward "evidence sufficient to support a finding of the nonexistence of the presumed fact.")).

### 2.  Unreasonableness of Delay

 "A court must consider and weigh any justification offered by the plaintiff for its delay." Aukerman, 960 F.2d at 1033.  Excuses that have been recognized in certain instances include: "other litigation; negotiations with the accused defendant; possibly poverty and illness in limited circumstances; wartime conditions; extent of infringement; and dispute over ownership of the patent." FMC Corp., 2009 WL 1033663, *4 (citing A.C. Aukerman Co., 960 F.2d at 1033).

SCA contends that it has come forward with evidence to show a genuine factual dispute on the reasonableness of any alleged delay.  Specifically, SCA maintains that its pursuit of the reexamination of the '646 patent is a reasonable excuse for any delay through 2007.  SCA also contends that it was not required to provide notice of the reexamination or notice that it intended to enforce its patent upon completion of the proceeding.  Further, SCA argues that the three year delay after the reexamination was reasonable because SCA was confidentially and deliberately investigating its infringement claim, including the selection of counsel.  However, the Court finds none of these explanations provide "a cognizable justification for the delay sufficient to rebut the presumption of laches." FMC Corp., 2009 WL 1033633, *4.

First, SCA's involvement in the reexamination of the '646 patent does not provide it with a sufficient excuse because SCA failed to provide notice to First Quality that it intended to litigate

7

its rights under the '646 Patent at the conclusion of the reexamination.  FMC Corp., 2009 WL 1033663, *4.  See also Hall, 93 F.3d at 1554 (finding no abuse of discretion in district court's conclusion that notice of an intent to sue after litigation was required under the facts of that case); Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 877 (Fed. Cir.1991) (holding that notice to the alleged infringer is the key to finding excusable delay and that "[f]or other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer. The notice must also inform the alleged infringer of the patentee's intention to enforce its patent upon completion of that proceeding." (internal citations omitted)).

SCA contends that such notice was unnecessary, relying on the Federal Circuit's statement in Aukerman that "there can be no rigid requirement in judging a laches defense that such notice must be given." 960 F.2d at 1039.  While there is no "rigid requirement" of notice, the Federal Circuit in Hall addressing the same argument held that, "'[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice, as in Jamesbury.'" Hall, 93 F.3d at 1554 (quoting Aukerman, 960 F.2d at 1039(citing Jamesbury Corp. v. Litton Indus. Products., Inc., 839 F.2d 1544 (Fed. Cir.1988)).  See Southern Grouts & Mortars, Inc. v. 3M Co., 2008 WL 4346798, *5 (S.D. Fla. Sept. 17, 2008).

In the present case, there was prior contact between SCA and First Quality regarding SCA's claim that certain First Quality absorbent pants-type diapers infringed the '646 Patent. (October 31, 2003, Letter, DN 95-3.) On November 21, 2003, counsel for First Quality responded indicating that the '646 Patent was invalid in view of what the parties refer to as the Watanbe patent ("the '649 Patent"). Five months later, on April 24, 2004, SCA sent another letter to First Quality asserting that a different First Quality Product infringed a different SCA Patent, U.S. Pat. No. 6,726,670 ("the '670 Patent"). SCA's April 2004 letter did not mention SCA's earlier assertion of the '646 Patent. (April

24, 2004, Letter, DN 83-10.)   At no time did SCA communicate with First Quality in any way that it was going to pursue its claims under the '646 Patent.  The evidence reflects that First Quality believed the matter was closed.  Under the facts of this case, notice by SCA of an intent to sue after the reexamination was required.  See Hall, 93 F.3d at 1554; Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1359 (Fed. Cir. 2008)(what is important is whether the defendant had reason to believe it was likely to be sued after the proceedings concluded).

Second, SCA's stated reasons for the three year delay in bringing suit once the reexamination ended does not provide it with a legally cognizable excuse for its delay in filing suit.  The Court rejects SCA's argument that it needed more than three years to determine whether it was appropriate to bring infringement claims against First Quality.  The evidence reflects that SCA had already completed its infringement analysis by October of 2003, when it sent the initial letter to First Quality.  (See Charles Macedo Decl., Ex. 40, Kevin Gorman Tr. 27-28.)  Additionally, SCA admitted that it has continuously tracked First Quality's activity since 2003 and has an entire department dedicated solely to competitive intelligence. (Macedo Decl., Ex. 18; Melissa DeMarinis Dep. 185:7-186:23; Lizelle Valdecanas Dep. 49: 4-50:5 (acknowledging that "SCA was tracking what First Quality was doing as early as October 29, 2003"); Kenneth Strannemalm Dep. 136:23-137:14.)  Additionally, SCA's claim that it is a foreign company unfamiliar with litigating in the United States is likewise not a legally cognizable excuse for its delay.  See Serdarevic, 532 F.3d at 1360. While SCA is a Swedish-based company, since 2001 all of SCA's litigation in the United States has been overseen by U.S.-based general counsel. (Gorman Tr. 32-33.)  In fact, SCA was represented by patent litigation counsel, Robert Grudziecki, in 2003-2004 when it accused First Quality of patent infringement.  Additionally, the attorneys from Grudziecki's firm prosecuted the reexamination of the '646 patent on behalf of SCA from 2004-2007.  Thus, SCA's delay in bringing

suit because of its asserted unfamiliarity with the United States patent system is belied by its earlier representation by United States based patent attorneys that sent notice letters on SCA's behalf and is not a reasonable or excusable delay.

Finally, SCA's delay caused by its search for legal counsel is likewise not sufficient to overcome the presumption. "A claimant's inability to find counsel willing to litigate [its] claim does not constitute a reasonable excuse for the delay." Bassali v. Johnson Controls, Inc., 2010 WL 1923979, *5 (W.D. Mich. May 12, 2010). See also Serdarevic, 532 F.3d at 1360; Hall, 93 F.3d at 1554 (citing Naxon Telesign Corp. v. Bunker Ramo Corp., 686 F.2d 1258, 1261 (7th Cir.1982); Wafer Shave Inc. v. Gillette Co., 857 F. Supp. 112, 120 (D. Mass.1993); Coleman v. Corning Glass Works, 619 F. Supp. 950, 954 (W.D.N.Y.1985)).

Thus, SCA's stated reasons for delay in filing suit are legally insufficient to overcome the presumption of unreasonable delay.[1]

### 3.  Material Prejudice

A claimant can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the adverse party. See FMC Corp., 2009 WL 1033663, *5 (citing Serdaveric, 532 F.3d at 1359–60). "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense." Aukerman, 960 F.2d at 1033. Material prejudice may be in the form of either or both economic and evidentiary prejudice. FMC Corp., 2009 WL 1033663, * 5 (D. N.J. April 17, 2009)(citing A.C. Aukerman Co., 960 F.2d at 1033). "Economic prejudice occurs when the defendant 'will suffer the loss of monetary investments or incur damages

---

[1]Even if the time period during which the SCA '646 Patent was being reexamined is not considered, there was a three year delay from the reexamination before SCA took any further action.  Under the facts of this case, this delay alone would support a finding of unreasonable delay without the benefit of the presumption.  See Digital Systems International, Inc. v. Davox Co., 1993 WL 664647, *3 (W.D. WA. July 1, 1993).

which likely would have been prevented by earlier suit.'" Bassali v. Johnson Controls, Inc., 2010 WL 1923979, *5 (W.D. Mich. May 12, 2010)(citing A.C. Aukerman Co., 960 F.2d at 1033). "Evidentiary prejudice may be established by demonstrating an 'inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events.'" Id. In either case, "the critical inquiry is whether the prejudice arises from the claimant's unreasonable delay in filing suit." Id.

SCA contends that it has come forward with evidence to rebut the presumption of economic prejudice. Specifically, SCA argues that a genuine factual dispute exists regarding a lack of nexus between the delay and the expenditures at issue. Specifically, SCA contends that there is ample evidence in the record to suggest that First Quality's capital expenditures in protective underwear lines and the acquisition of Tyco Healthcare Retail Group ("THRG") were directly related to its efforts to become a market leader in private label protective underwear, and First Quality would have made such expenditures in pursuit of its goal regardless of when SCA brought this litigation. (SCA's Response at 23-25 (citing Moshe Opponheim Dep. 34-35).)   SCA maintains that First Quality has not identified a single document that associates any business decision with any supposed delay by SCA in bringing suit or that First Quality would have acted differently had SCA sued earlier. Further, SCA contends that First Quality's maintenance of the status quo after the filing of the Complaint shows the speculative nature of its economic prejudice claims. (Id. at 22.) However, the Court finds none of these explanations and/or arguments provide a genuine issue of fact to rebut the presumption of laches.

First, the record demonstrates that during the seven-year delay First Quality made considerable capital investments and substantial expenditures in expanding its business. "In granting summary judgment to the alleged infringer on laches, courts usually have relied upon

evidence of considerable capital investment or substantially increased sales." Lautzenhiser Technologies, 752 F. Supp. 2d at 1003-1004.[2] "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." Aukerman, 960 F.2d at 1033.  Since 2006, First Quality purchased at least three new protective underwear lines for its King of Prussia facility alone, with its most recent line added in 2009 that cost in excess of $10 million dollars.  (Macedo Decl., Ex. 36; Andrew Busch Dep. 23-24.)   In 2008, First Quality purchased from Covidien, Ltd. ("Covidien") THRG which includes some of the product lines at issue in this litigation.

Contrary to the argument of SCA, while First Quality admits that it has continuously sought opportunities to expand its sales, SCA's delay in bringing an infringement action deprived First Quality of the opportunity to modify its business strategies.  Caltech Controls Corp. v. OIL Instruments, Inc., 8 Fed. Appx. 941, 951 (Fed. Cir. 2001)(affirming summary judgment on laches defense where district court found that corporate "changes would have been structured differently had [the defendant] been aware of a potential lawsuit by [the plaintiff]."); Lautzenhiser

---

[2]See also  R2 Medical Systems v. Katecho, Inc., 931 F. Supp. 1397, 1411 (N.D. Ill. July 19, 1996); Adelberg Laboratories, Inc. v. Miles, Inc., 921 F.2d 1267, 1272 (Fed. Cir.1990) (during delay, defendant made considerable capital investments in expanding business); ABB Robotics, 828 F. Supp. at 1396 (granting summary judgment where alleged infringer enjoyed three-fold increase in sales of challenged device during period of delay); Motorola, Inc. v. CBS, Inc., 672 F. Supp. 1033, 1037 (N.D. Ill. 1986) (ruling that Motorola could not overcome presumption of prejudice because CBS's sales of allegedly infringing product continued and expanded while Motorola delayed in bringing suit); Manus v. Playworld Sys.,Inc., 893 F. Supp. 8, 10 (E.D. Pa. 1995)(economic prejudice was shown with costs associated with increased production of accused article and marketing and capital expenditures over the ten-year delay in filing suit); 5 Chisum, *Patents*, § 19.05 [2][c] (1996 Supp.) (noting there are very few cases when a lengthy period of unexcused delay escaped a laches finding because of proof of want of injury)).  See also Shell Global Solutions Inc. v. RMS Engineering, Inc., 782 F. Supp. 2d 317, 327-328 (S.D. Tex. 2011); Technology for Energy Corp. v. Computational Systems, Inc., 1993 WL 366350, *7–8 (finding economic prejudice where defendant expanded its business, including employees, sales, and research and development).

Technologies, 752 F. Supp. 2d at 1004 (rejecting plaintiff's argument that the "[defendants']

expenditures were mere garden-variety ventures in the ordinary course of business, and that no

evidence suggests [defendants] would have altered their conduct had [the plaintiff] filed suit earlier"

because "common sense suggests that Defendants would have modified their business strategies if

they came under suit for infringement.") In the present case, Moshe Oppenheim, in-house counsel

for First Quality, testified that First Quality would not have invested millions of dollars in acquiring

and retooling the King of Prussia facility if it was embroiled in a lawsuit with SCA relating to these

products.  (Oppenheim Dep. 100-101.)  See Digital Systems, 1993 WL 664647, *3 (granting

summary judgment of laches where DSI "offers unchallenged evidence of its investment in its

business and its phenomenal growth" during the delay period and noting that "[even if only a part

of DSI's expansion involves equipment allegedly infringing Davies' patents, DSI has been

materially injured.")  Similarly, Mr. Oppenheim testified that had SCA brought suit earlier, First

Quality could have structured differently its acquisition of THRG which included some of the

product lines at issue in this litigation.  According to Mr. Oppenheim, First Quality could have either

demanded that Covidien resolve all issues with respect to SCA's claims prior to the acquisition or

foregone purchase of the product lines accused of infringement.  (Id. at 89-95 ("Q: If SCA had sued

First Quality prior to the acquisition of Covidien is it your testimony that First Quality would not

have acquired Covidien?  A: And my answer is that that is one potential outcome that would have

come of it.  Other potential outcomes, so I can just be clear, we could have walked away from the

deal like we did at one point . . .[or] carved out the protective underwear portion of the deal." Id. at

89-90.)).        In fact, First Quality walked away from its acquisition of THRG at one point, and

only returned to the bargaining table at Covidien's request. (Oppenheim Dep. 14-15.)  Further, Mr.

Oppenheim, who was responsible for managing and structuring the THRG acquisition, testified that

avoidance of intellectual property issues was a key issue in the transaction.  (Id. at 15-17.)  The record reflects that in acquiring THRG, First Quality made the acquisition based on the understanding that all of THRG's product lines had a "clean bill of health."  In fact, First Quality required Covidien to settle its outstanding patent disputes with Kimberly-Clark before completing the THRG acquisition.  (Id. at 16.)  First Quality also restructured the THRG acquisition as a result of Covidien's Mexican intellectual property liability purchasing only the assets of the Mexican facility. (Id. at 24-25.)  Thus, if SCA had sued earlier, First Quality would not have aggressively expanded its adult incontinence line of products with the purchase of new product lines and THRG. It would have likely structured the acquisition of THRG differently requiring Covidien to settle any outstanding patent disputes.  "[C]ommon sense suggests that [First Quality] would have modified [its] business strategies if [it] came under suit for infringement."  Lautzenhiser Technologies, 752 F. Supp.2d at 1004.

For these reasons, the Court finds that SCA failed to present evidence sufficient to create a genuine issue of material fact regarding the nonexistence of the presumed material prejudice and, as a result the presumption remains intact.  See Lautzenhiser Technologies, 752 F. Supp. 2d at 1004. First Quality's laches defense is valid and the Court will not recognize any of SCA's claims of patent infringement against First Quality prior to the date of filing its claim of infringement on August 2, 2010.

## B.  Equitable Estoppel

Equitable estoppel may serve as an absolute bar to a patentee's claim of infringement. Lautzenhiser Technologies, 752 F. Supp. 2d at 1008 (citing Scholle Corp. v. Blackhawk Molding Co., 133 F.3d 1469, 1471 (Fed. Cir.1998)). The equitable estoppel bar applies when:

a.   The patentee, through misleading conduct, leads the alleged infringer to

14

reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence when there was an obligation to speak.
b.  The alleged infringer relies on that conduct.
c.  Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

A.C. Aukerman Co., 960 F.2d at 1028.  In contrast to laches, "'equitable estoppel focuses on the reasonableness of the *Defendant's* conduct.'"  Lautzenhiser Technologies, 752 F. Supp. 2d at 1008. "And, unlike laches, 'unreasonable delay' is not an element of estoppel and no presumption applies, meaning a party advancing an estoppel defense must prove each of the elements by a preponderance of the evidence."  Id.

## 1.  Misleading Conduct

"To prove the first element of equitable estoppel, the alleged infringer must prove that the patentee, through misleading conduct, has led the infringer to infer  that it does not intend to enforce the patent."  Lautzenhiser Technologies, 752 F. Supp. 2d at 1008-1009. The patentee's misleading conduct may include specific statements, actions, inaction, or silence.  Id. at 1009 (citing Gossen Corp. v. Marley Mouldings, 977 F. Supp. 1346, 1353–54 (E.D. Wis. Aug. 20, 1997) (citing ABB Robotics, 52 F.3d at 1063)).  According to the Federal Circuit in Aukerman:

The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time. In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. In Dwight & Lloyd Sintering, Judge Learned Hand noted that estoppel was regularly based on "no further assurance [that a known competitor would not be sued than] the patentee's long inaction." 27 F.2d at 827. There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading *inaction*.

A.C. Aukerman Co., 960 F.2d at 1042 (quoting Dwight & Lloyd Sintering Co. v. Greenawalt, 27

F.2d 823 (2d Cir. 1928)).

SCA unquestionably misled First Quality though its 2003 letter and subsequent inaction. A.C. Aukerman Co., 960 F.2d at 1042; Radio Systems Corp. v. Lalor, 2012 WL 254026, *7 (Jan. 26, 2012), aff'd in part, rev'd in part, 709 F.3d 1124 (Fed. Cir. 2013). It is undisputed that SCA first accused First Quality of infringing the '646 Patent in 2003. First Quality promptly responded to SCA's assertion letter in November of 2003, stating that the '646 Patent was invalid. SCA did not respond to the November letter. Instead, SCA wrote to First Quality in April of 2004 regarding a different product and a different patent. SCA did not mention the '646 Patent or the prior correspondence even after First Quality responded to SCA's second infringement assertion and referred to the earlier correspondence regarding the '646 Patent.

In an effort to raise a genuine dispute of fact, SCA argues that its conduct was not misleading because its October 31, 2003, letter did not threaten litigation but merely requested First Quality's "opinion" on the infringement issue. Initially, "threatened litigation is not an element of either laches or estoppel." Digital Systems, 1993 WL 664647, *3. Additionally, the record reflects that prior to the October 2003 letter, SCA had completed its investigations of infringement. The letter informed First Quality that certain absorbent pants-type diapers made by First Quality infringe claims of the '646 Patent. SCA demanded First Quality's assurance that it would immediately stop making and selling such products. After reviewing the correspondence as a whole, the Court finds that the letter by SCA was reasonably viewed by First Quality as a threat of an infringement suit. See, e.g., Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1311 (Fed. Cir. 2010)(rejecting plaintiffs' argument that its letters did not threaten suit because of the equivocal nature of the statements that its patents "may" cover some of the products, but were reasonably viewed by the defendant as a threat of an infringement suit).

16

Likewise, SCA's letter in April of 2004 to First Quality alleging infringement of a different patent, the '670 Patent, further supports the misleading nature of SCA's conduct.  The April 2004 letter was sent five months after First Quality's response denying infringement of the '670 Patent. SCA did not mention the '646 Patent assertion at all, even after First Quality directed SCA's attention to the earlier letters.  Whether this letter "is viewed as a tacit withdrawal of the ['646 patent] or as misleading silence with respect to the ['646 patent], the result is the same, for it was reasonable for [First Quality] to infer that [SCA] was not continuing the accusation of infringement as to the ['646 patent]."  Aspex Eyewear, 605 F.3d at 1311.

Accordingly, the Court finds that the evidence compels a reasonable fact finder to conclude that SCA engaged in misleading conduct supporting "an inference that the patentee did not intend to press an infringement claim against the alleged infringer." A.C. Aukerman Co., 960 F.2d at 1042. Therefore, the first element of estoppel – misleading conduct – is satisfied.

### 2. Reliance

"A party invoking equitable estoppel must also prove reliance."         Lautzenhiser Technologies, 752 F. Supp. 2d at 1009.   Reliance, while not an element of laches, is essential to equitable estoppel. Aukerman, 960 F. 2d at 1042 (citing Heckler v. Community Health Services, 467 U.S. 51, 59 (1984)). "The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." Id. at 1042-1043. "Reliance is not the same as prejudice or harm, although frequently confused." Id. at 1043.   As explained by the  court in Aukerman: "An infringer can build a plant being entirely unaware of the patent.  As a result of infringement, the infringer may be unable to use the facility.  Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer

17

into a sense of security in going ahead with building the plant." Id.

First Quality "relied on the misleading conduct of [SCA] in connection with taking some action." Aukerman, 960 F.2d at 1042–43.  First Quality points to its acquisition of THRG in 2008 and its purchase of additional protective underwear lines since 2006 – some of the products which SCA claims infringe the '646 Patent.  Specifically, Babak Demaghi testified that First Quality continued to manufacture and sell the accused products because of SCA's inactions: "The fact that we never heard back from SCA once we sent them [the November 23, 2003] letter that you have put in front of me . . . and as a result we did not consider it to be an issue because we did not know what, if any, issue existed for us to follow up on." (Babak Damaghi Dep at 62.)  Further, Mr. Damaghi testified as follows:

> Q: . . . [W]as there any particular point in time when First Quality began to rely on no communications from SCA with respect to conducting its business for the sale of protective underwear?
> A: My answer is after sending [the November 23, 2003 letter] this letter this matter was never thought of again.

(Id. at 63-64.)  Additionally, as discussed above, Mr. Oppenheim testified that First Quality would not have invested millions of dollars in acquiring and retooling the King of Prussia facility if it was embroiled in a lawsuit with SCA relating to these products.  (Oppenheim Dep. 100-101).  Similarly, Mr. Oppenheim testified that had SCA brought suit earlier, First Quality could have structured its acquisition of THRG differently either demanding that Covidien resolve all issues with respect to SCA's claims prior to the acquisition or foregoing purchase of the product lines accused of infringement.  (Oppenheim Dep. 89-95.)  See Aspex, 605 F.3d at 1311-12.

In response, SCA argues that it is conceivable that First Quality relied not on SCA's inaction, but on First Quality's own belief that SCA's '646 Patent was invalid.  It is undisputed that after receiving the 2003 letter from SCA, counsel for First Quality advised SCA that after a cursory

18

review of the prior patents he believed that '646 Patent was invalid and therefore, First Quality was not infringing upon the '646 Patent.  With the exception of this letter, SCA has not cited to any testimony or internal communications indicating that First Quality actually relied on a belief that '646 Patent was invalid.   Notwithstanding, "[t]he fact that [the alleged infringer] may have relied in part on [it's attorney's] advice does not negate the fact that it also relied on the patentee's apparent abandonment of [its] infringement claim." Wafer Shave, Inc., 857 F. Supp. 112, 123 (D. Mass. 1993)[3](citing MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1573 (Fed. Cir. 1989) (inventor's position that co-inventor did not need to be named on patent was based on reliance on both his own interpretation and plaintiff/co-inventor's silence); Advanced Hydraulics, 525 F.2d at 479 (reliance on patentee's misleading conduct found even though infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement).  At the very least, SCA "reinforced [First Quality's] opinion through their inaction." Radio Systems Corp. v. Labor, 2012 WL 254026, *9 (Jan. 26, 2012), aff'd in relevant part, 709 F.3d 1124 (Fed. Cir. 2013) (affirming district court's grant of summary judgment on equitable estoppel as it related to one patent). See MCV, Inc., 870 F.2d at 1573; Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479 (7th Cir.1975) (concluding that alleged infringer relied on patentee's misleading conduct despite the fact that the infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). But see Hall, 93 F.3d at 1558; Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 776 (Fed. Cir. 1995).

---

[3] "To find otherwise would encourage those accused of infringement not to seek legal advice, but to rely solely on a patentee's future conduct and to have faith that such conduct will prevent the patentee from succeeding in a lawsuit. Such a practice would injure the ability of alleged infringers to protect their legal rights, and discourage the efficient resolution of accusations of infringement which a fully informed, well-advised person would find meritorious, or at least too risky to litigate." Wafer Shave, Inc., 857 F. Supp. at 123.

Finally, contrary to the argument by SCA, First Quality does not have to prove that it would have forgone its protective underwear business entirely to satisfy the reliance element. "[T]o show reliance on [a patentee's] silence and inaction, [an infringer] need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on reliance on [the patentee's] silence." Aspex Eyewear, 605 F.3d at 1312.

Accordingly, no reasonable fact finder could conclude that First Quality did not rely on SCA's inaction. Radio Systems Corp., 2012 WL 254026, *9.

**3. Material Prejudice**

The requirement of material prejudice for equitable estoppel is identical to the requirement under laches. See Aukerman, 960 F.2d at 1043 ("[a]s with laches, the prejudice may be a change of economic position or loss of evidence."). "In evaluating whether economic, or business, prejudice has occurred, courts must 'look for a *change* in the economic position of the alleged infringer during the period of the delay.'" Wafer Shave, 857 F. Supp. at 125 (citing Aukerman, 960 F.2d at 1033).

As discussed above, during the seven years that SCA remained silent, First Quality suffered economic prejudice by making substantial capital investments, acquiring THRG from Covidien, and increasing its sales of the accused products. Additionally, just as the alleged infringer in Wafer Shave, First Quality lost the opportunity to limit its present exposure to substantial litigation costs and damages because it believed there was no longer a threat of litigation concerning the [patentee's] patent." Id. See also Aukerman, 960 F.2d at 1033 (noting that patentee may not "intentionally lie silently in wait watching damages escalate . . . particularly where an infringer, if he had had notice, could have switched to a noninfringing product.") (citations omitted).

Applying these factors to the facts in the light most favorable to the non-moving party, the Court concludes that no genuine dispute of material fact exists and that First Quality is entitled to

summary judgment as a matter of law on the defense of estoppel.

## IV. CONCLUSION

For the reason set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants First Quality Baby Products, LLC, First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC (collectively "First Quality") for summary judgment based on the doctrines of laches and equitable estoppel [DN 82, DN 83] is **GRANTED** and the motion by First Quality for a hearing on this motion for summary judgment [DN 84] is **DENIED**.  **IT IS FURTHER ORDERED** that all remaining motions are **DENIED AS MOOT**.  A Judgment shall be entered consistent with the Opinion.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 15, 2013

cc: counsel of record